IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| John A. Bryant, ) | C/A No. 0:14-535-RBH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| K. Washington; Lt. W. Duvall, Dining Room ) | |
| Supervisor; W. Smith; United States, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, John A. Bryant, a self-represented federal prisoner, filed this civil action alleging constitutional violations under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971),[1] and alleging negligence pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 ("FTCA"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion to dismiss or, in the alternative, for summary judgment. (ECF No. 26.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Bryant of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 27.) Bryant filed a response in opposition to the motion. (ECF

---

[1] Bivens establishes as a general proposition that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. Carlson v. Green, 446 U.S. 14, 18 (1980); see also Holly v. Scott, 434 F.3d 287, 289 (4th Cir. 2006). A Bivens claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983. Therefore, caselaw involving § 1983 claims is applicable in Bivens actions, and vice versa. See Harlow v. Fitzgerald, 457 U.S. 800, 814-20, n.30 (1982); see also Farmer v. Brennan, 511 U.S. 825 (1994).

Page 1 of 15



No. 45.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

## BACKGROUND

The following facts are either undisputed or taken in the light most favorable to Bryant. (See generally, Compl., ECF No. 1 at 2-5.) Bryant alleges that, after receiving his breakfast tray in the cafeteria on October 22, 2012, he slipped in water that had leaked from a hot bar and fell backward onto his right side, causing a neck injury. Defendants Washington and Duvall assisted Bryant to his feet and he reported to the medical department for examination. Bryant claims that he did not see any "wet floor" signs where he fell and asserts that, had Defendant Smith inspected the area, he would have noticed the excessive water on the floor. Bryant further claims that Defendants Washington and Duvall "lied during the investigation" in violation of prison policies. Bryant, who seeks monetary damages, alleges that he has suffered mentally and physically from his injuries on a daily basis since his accident.

## DISCUSSION

**A.     Applicable Standards**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual



content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

The court observes that it is required to liberally construe *pro se* complaints. Id. Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's factual allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Twombly, 550 U.S. 544, 555-56 (2007)). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Additionally, summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry



of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

**B.     Bivens Claims**

To state a claim under § 1983 or Bivens, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state or federal law. West v. Atkins, 487 U.S. 42, 48 (1988). As an initial matter, the defendants argue that the United States is immune from any constitutional claims. (ECF No. 26 at 5.) The principle of sovereign immunity prohibits individuals from suing the United States or its agencies without their consent, see FDIC v. Meyer, 510 U.S. 471, 484-86 (1994) (declining to extend Bivens to permit suit against a federal agency); Global Mail Ltd. v. United States Postal Service, 142 F.3d 208, 210 (4th Cir. 1998) (federal governmental entity



entitled to sovereign immunity), and "the United States has not waived sovereign immunity in suits claiming constitutional torts."  Reinbold v. Evers, 187 F.3d 348, 355 n.7 (4th Cir. 1999); see also Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) ("Bivens did not abolish the doctrine of sovereign immunity of the United States.  Any remedy under Bivens is against federal officials individually, not the federal government.").  Therefore, the court finds that the defendants' motion should be granted as to any constitutional claims asserted by Bryant against the United States.

Further, as argued by the defendants, the Complaint fails to allege that any of Bryant's constitutional rights were violated by the defendants.[2]  (ECF No. 26 at 19.)  Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although the court must liberally construe a *pro se* complaint, the United States Supreme Court has made clear that a plaintiff must do more than make conclusory statements to state a claim.  See Iqbal, 556 U.S. at 677-78; Twombly, 550 U.S. at 555.  Further, the reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions.  Iqbal, 556 U.S. at 678-79.  Given that the Complaint fails to allege a violation of Bryant's constitutional rights by the defendants, the court finds that the defendants' motion should be granted as to any Bivens claims.

However, even if liberally construed to raise a constitutional allegations under Bivens, the Complaint fails to state a cognizable claim.  To the extent Bryant may be alleging that the defendants failed to protect him from harm, his claims are analyzed under the Eighth Amendment to the United States Constitution, which expressly prohibits the infliction of "cruel and unusual punishments."

---

[2] The court notes that the order authorizing service of process in this case construed the Complaint to assert claims solely under the FTCA.  (ECF No. 21 at 2.)



U.S. Const. amend. VIII. To establish a failure to protect claim under the Eighth Amendment, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

As argued by the defendants in their motion (ECF No. 26 at 22-25), Bryant fails to meet either of the elements required to show deliberate indifference to health or safety and Bryant does not refute this argument in his response in opposition (ECF No. 45 at 4-5). First, a "slippery floor does not constitute a denial of life's necessities to meet the first objective prong" of the test. Simmons v. Parker, C/A No. 4:10-1454-TLW-TER, 2011 WL 4965188, at *8 (D.S.C. Aug. 29, 2011), adopted by 2011 WL 4965085 (D.S.C. Oct. 18, 2011); see also Samuel v. Nolland, C/A No. 2:11-3417-MGL-BHH, 2013 WL 360263, at *3 (D.S.C. Jan. 9, 2013), adopted by 2013 WL 361083 (D.S.C. Jan 30, 2013). Further, the defendants provide affidavit testimony from Defendants Washington, Duvall, and Smith stating that none of these individuals had knowledge of water on the cafeteria floor prior to Bryant's fall on October 22, 2012. (ECF Nos. 26-7, 26-8, 26-9.) While

Bryant alleges in his response that the defendants should have known that "it was possible that the area around the hot bar would become slippery," he provides no factual allegations or evidence to demonstrate that any defendant was aware of the slippery floor conditions before the accident. (ECF No. 45 at 11.)

Finally, to the extent Bryant claims that Defendants Washington and Duvall violated his constitutional rights by violating prison policy, Bivens provides relief from a violation of federal constitutional rights, not from a violation of prison-created policies or procedures. Keeler v. Pea, 782 F. Supp. 42 (D.S.C. 1992). Therefore, as asserted by the defendants in their motion (ECF No. 26 at 25-26), Bryant's policy violation allegations fail to state a cognizable constitutional claim. At most, Bryant asserts a claim of negligence which, in general, is not actionable under § 1983 or Bivens. See Daniels v. Williams, 474 U.S. 327, 328-36 n.3 (1986). Accordingly, the court concludes that Bryant fails to state a claim for deliberate indifference to his safety and the defendants' motion should be granted as to any Bivens claims raised in the Complaint.

**C.     Federal Tort Claims**

The FTCA, 28 U.S.C. §§ 2671-2680, which provides for a limited waiver of the Government's sovereign immunity from suit by allowing a plaintiff to recover damages in a civil action for loss of property or personal injuries caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because the FTCA includes a limited waiver of the Government's immunity as a sovereign, the statute is to be strictly construed and its requirements strictly met. See Welch v. United States, 409



F.3d 646, 650-51 (4th Cir. 2005); see also Lane v. Pena, 518 U.S. 187, 192 (1996) (stating that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign"). One such requirement is the exhaustion of administrative remedies and the FTCA requires that a claim be presented to the appropriate federal agency before filing a civil action against the government. See 28 U.S.C. § 2675(a).[3] This exhaustion requirement may not be waived and a plaintiff's failure to follow the statutory exhaustion requirements deprives a district court of subject matter jurisdiction over the claim. See Plyler v. United States, 900 F.2d 41 (4th Cir. 1990); see also McNeal v. United States, 508 U.S. 106, 113 (1993). The burden of establishing subject matter jurisdiction over an FTCA claim lies with the plaintiff. See Welch, 409 F.3d at 651.

As indicated above, the court must determine liability in accordance with the substantive tort law of the state "where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see also Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001) (holding that the FTCA "permits the United States to be held liable in tort in the same respect as a private person would be held liable under the law of the place where the act occurred"). Because Bryant alleges that his injury occurred while he was incarcerated in a South Carolina federal prison, the substantive law of South Carolina controls.

To recover in a negligence claim under South Carolina law, "a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty."

---

[3] The regulations for filing an administrative claim under the FTCA are codified at 28 C.F.R. § 14.1 et seq. The regulation pertaining to presentation of a claim states that "a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." See 28 C.F.R. § 14.2(a).



Bloom v. Ravoira, 529 S.E.2d 710, 712 (S.C. 2000).  A plaintiff may show an affirmative duty of care arising from a statute, if the plaintiff is a member of the class of persons the statute is intended to protect from the type of harm suffered.  See Rayfield v. S.C. Dep't of Corr., 374 S.E.2d 910, 914 (S.C. Ct. App. 1988).  A breach of such duty is shown where it is "foreseeable that one's conduct may likely injure the person to whom the duty is owed."  Horne v. Beason, 331 S.E.2d 342, 344 (S.C. 1985).  However, even when such a breach exists, the "damages allegedly sustained must be shown to have been proximately caused, i.e. causally connected, to the breach of duty in order to warrant a recovery."  Id.  The proximate causation analysis is a two-step process, requiring proof of both legal causation and cause-in-fact.  See Oliver v. S.C. Dep't of Highways & Pub. Transp., 422 S.E.2d 128, 130 (S.C. 1992).  Legal causation "turns on the issue of foreseeability . . . . An injury is foreseeable if it is the natural and probable consequence of a breach of duty."  Parks v. Characters Night Club, 548 S.E.2d 605, 609 (S.C. App. 2001).  "Causation in fact is proved by establishing the plaintiff's injury would not have occurred 'but for' the defendant's negligence."  Id.

  Moreover, a plaintiff seeking recovery for injuries resulting from a foreign substance on a floor must establish either that "the substance was placed there by the defendant or its agents, or that the defendant had actual or constructive notice the substance was on the floor at the time of the slip and fall."  Wintersteen v. Food Lion, Inc., 542 S.E.2d 728, 729-30 (S.C. 2001); see also Hackworth v. United States, 366 F. Supp. 2d 326, 329 (D.S.C. 2005) (citing the Wintersteen requirements in the court's analysis of a plaintiff's FTCA claim).  "The mere fact the substance was on the floor is insufficient standing alone to charge the [defendant] with negligence."  Calvert v. House Beautiful Paint and Decorating Ctr., Inc., 443 S.E.2d 398, 399 (S.C. 1994).

In its motion, the defendants concede that prison officials owed Bryant a duty, pursuant to 18 U.S.C. § 4042, to provide reasonable care. (ECF No. 26 at 29.) However, the defendants argue that Bryant fails to set forth any evidence, other than his own conclusory allegations, that the defendants were negligent. (Id.) The defendants also assert that Bryant cannot demonstrate the requisite element of causation to maintain his negligence claim. (Id. at 31-32.) In support of its motion, the defendants submit Bryant's medical records and affidavit testimony from Victor Loranth, M.D. (ECF Nos. 26-5, 26-6.) Such records reflect that, during his February 2011 health intake assessment at FCI Williamsburg, Bryant complained of back pain resulting from a fall at the Pamunky Regional Jail in Virginia in January of 2011. (ECF No. 26-5 at 2-3, 6; ECF No. 26-6 at 2.) Bryant sought medical attention for back pain in April of 2011 and continued to complain of head and neck pain in May of 2011. (ECF No. 26-5 at 22, 25.) On February 19, 2012, Bryant was examined by medical staff after slipping and falling in water on the floor of his cell. (ECF No. 26-5 at 26.) The medical record reflects that Bryant reported a pain level of eight on a pain scale of one to ten and complained of back and shoulder pain, which worsened when walking. (Id.; see also ECF No. 26-6 at 3.) The examination reflected no gross deformities, bruising, soft tissue tenderness, swelling, or fluid collection under the skin and Bryant reportedly had a mild limp in the examination room, but a normal gait on compound. (Id.) Bryant did report tenderness to the touch of his thoracic spine, but refused to comply with the movements requested by medical staff to determine the extent of any injury. (Id.) Diagnostic x-rays performed on February 22, 2012, showed no abnormalities except mild degenerative disc disease. (ECF No. 26-5 at 30-31; ECF No. 26-6 at 3.) Bryant sought medical attention over the next eight months for continued back pain. (ECF No. 26-5 at 38-67; ECF

No. 26-6 at 3-4.) Therefore, Bryant was approved for magnetic resonance imaging ("MRI"). (ECF No. 26-5 at 68-69; ECF No. 26-6 at 4.)

However, prior to receiving an MRI, Bryant's October 2012 fall in the inmate dining hall occurred. Medical records from October 22, 2012, indicate that Bryant complained of tenderness, aching and pain to his right arm and shoulder; however, no deformity was noted. (ECF No. 26-5 at 73-75; ECF No. 26-6 at 4.) An x-ray performed on that date was negative except for mild degenerative joint disease in Bryant's shoulder. (ECF No. 26-5 at 76; ECF No. 26-6 at 4.) Bryant was seen again for pain by medical staff on October 26, 2012, where mild muscle strain and mild cervical radiculopathy were suspected. (ECF No. 26-5 at 85.) The medical record notes that shoulder x-rays from the date of the fall "were grossly unremarkable" and the formal report reflected only mild shoulder degenerative joint disease. (Id.) A radiology report dated October 30, 2012, reflects moderate degenerative disc disease with spondylosis (degenerative osteoarthritis) in Bryant's neck along the C5/6 discs, but no abnormal mobility. (ECF No. 26-5 at 89.)

Bryant continued to report pain and an MRI was performed on his lumbar region on December 12, 2012, reflecting scoliosis of the spine, with a curvature of the spine to the right, bone spurs causing stenosis, and deterioration of cartilage between the spinal vertebrae due to aging. (ECF No. 26-5 at 102-105; ECF No. 26-6 at 6.) Bryant's complaints of pain persisted and he was seen by a neurologist outside of the prison on May 23, 2013, who concluded that Bryant's neck and back pain resulted from degenerative disc disease. (ECF No. 26-5 at 131-133; ECF No. 26-6 at 7-8.) The affidavit testimony of Dr. Loranth indicates that, "[d]uring the course of Mr. Bryant's treatment, medical personnel indicated that there was no neural, spinal, or neurological injuries attributable to the type of blunt force trauma or strain involved in a slip-and-fall accident; rather, Mr. Bryant's pain

stemmed from mild degenerative disc disease and age-induced deterioration." (ECF No. 26-6 at 9.)

Bryant's response in opposition to the defendants' motion reasserts that the defendants' failure to discover the water near the hot bar or post signs warning of a possible wet floor prior to his fall on October 22, 2012, "created and contributed" to Bryant's injuries. (ECF No. 45 at 12.) Bryant further asserts that the pain in his cervical region started on the day of his fall in the cafeteria and that medical records fail to explain the cause of his bulging discs. (ECF No. 45-1 at 15.)

As argued by the defendants, Bryant provides only his own conclusory allegation that his neck pain is proximately caused by the fall on October 22, 2012, and does not support this allegation with any expert medical evidence. See Pederson v. Gould, 341 S.E.2d 633, 634 (S.C. 1986) (noting that expert testimony is required unless the situation is one "where the common knowledge or experience of laymen is extensive enough for them to be able to recognize or infer negligence on the part of the [defendant] and also to determine the presence of the required causal link between the [defendant's] actions and the [plaintiff's] medical problems"); see also Dawkins v. Union Hosp. Dist., 758 S.E.2d 501, 504 (S.C. 2014) (holding that, while expert testimony is not necessary where the facts can be evaluated by exercising common knowledge, "medical knowledge is generally outside the realm" of such common knowledge and expert testimony is required to establish whether the defendant's actions proximately caused the plaintiff's injury). While Bryant is only required to "prove that the negligence on the part of the defendant was at least one of the proximate, concurring causes of his injury," Hughes v. Children's Clinic P.A., 237 S.E.2d 753, 757 (S.C. 1977), he fails to present evidence to establish such causation. Accordingly, the court finds that Bryant fails to state a claim for negligence.

The defendants further argue that Bryant fails to state a viable negligence claim under South Carolina law because he cannot "establish either prong of a slip and fall action." (ECF No. 26 at 29-32.)  In his response in opposition to the defendants' motion, Bryant alleges that the defendants should have known that the hot bar would become slippery during mealtimes. (ECF No. 45 at 10-11.)  Bryant also provides affidavits from other prisoners who testify that water leaked from the hot bar on the morning of October 22, 2012, and no warning signs were placed in the area until after Bryant's fall. (ECF No. 45-1 at 1-2.)

As argued by the defendants in their motion, Bryant has presented no evidence to demonstrate that the defendants or their agents affirmatively placed water on the cafeteria floor.  He also fails to show that any prison employee had actual knowledge that a puddle of water existed near the hot bar prior to Bryant's fall on October 22, 2012.  While a plaintiff may establish constructive notice of a dangerous condition by "showing that the material had been on the floor sufficiently long that the defendant was negligent in failing to discover or remove it," Milligan v. Winn-Dixie Raleigh, Inc., 254 S.E.2d 798, 799 (1979), Bryant fails to make such a showing.  The defendants provide affidavit testimony from Defendant Smith, who states that he walked the cafeteria floor prior to the inmates' arrival on October 22, and did not see any water on the floor. (ECF No. 26-9 at 1.)  Bryant, who alleges that he slipped and fell at approximately seven o'clock in the morning, provides no facts to demonstrate that the water had been present for a sufficiently long period of time that the defendants were negligent in failing to discover or remove it prior to Bryant's fall.  See Gosnell v. United States Postal Serv., C/A No. 6:05-1315-HFF, 2007 WL 1034997 at *3 (D.S.C. Mar. 30, 2007) (granting the government's motion for summary judgment in an FTCA action where plaintiff could not demonstrate how long water had remained on the floor prior to her fall).  Moreover,

Bryant's assertion that general knowledge of slippery conditions around the hot bar constitutes notice to the defendants of a dangerous condition is unavailing because courts have declined "to adopt a general awareness standard for proving constructive notice." See id. at *4; see also Wintersteen, 542 S.E.2d at 730. Accordingly, the court concludes that Bryant fails to establish the requisite elements of a slip and fall claim under South Carolina law. See id. at 729. As such, the defendants' motion should be granted.

**D.     Other Claims**

To the extent Bryant is attempting to assert any other claims, his Complaint fails to state a plausible claim for relief. See Iqbal, 556 U.S. at 667-78.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion (ECF No. 26) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 5, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).